IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CRAIG PC SALES & SERVICE, LLC,
an Oklahoma domestic limited liability
Company; RAY T. CRAIG, SR., and
RAY T. CRAIG, JR.,

       Plaintiffs,

v.                                  Case No. CIV–17–3–F

1. CDW GOVERNMENT, LLC, an
Illinois limited liability company;

2. MICROSOFT CORPORATION,

       Defendants.

DEFENDANT MICROSOFT CORPORATION'S MOTION TO DISMISS
PURSUANT TO THE OKLAHOMA CITIZENS PARTICIPATION ACT,
OKLA. STAT. TIT. 12, § 1430 *ET SEQ.*, AND FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

**Page**

**I.**    **Introduction** ................................................................... 1

II.    Factual Background ........................................................... 2

    A.    Microsoft Investigates Complaints of Plaintiffs' Software Piracy. ............. 2

    B.    The United States Brings a Civil Action, Which Plaintiffs Settle. .............. 4

    C.    Oklahoma Brings a Criminal Action, Which Plaintiffs Settle. .................... 5

    D.    Plaintiffs Sue Microsoft's Reseller and Three Years Later, Sues Microsoft for its Statements to Law Enforcement and the Court. ............. 6

III.    Argument .......................................................................... 7

    A.    This Court Should Strike Plaintiffs' State-Law Claims Under the Oklahoma Citizens Participation Act. ........................................... 7

      1.    The OCPA applies to plaintiffs' state-law claims. ........................ 8

      2.    Plaintiffs cannot meet their burden under the OCPA. ................... 11

        a.    Plaintiffs have failed to allege, much less provide evidence, of malicious prosecution. ....................................... 12

        b.    Plaintiffs have also failed to allege tortious interference. ...... 14

        c.    The statute of limitations bars the majority of Plaintiffs' state-law claims. ................................................ 16

        d.    Microsoft's statements to the state court are privileged. ...... 18

    B.    The Court Should Dismiss Plaintiffs' Claims Under Rule 12(b)(6). ........... 19

      1.    Plaintiffs have failed to allege a cause of action for violation of federal constitutional rights. ........................................... 20

        a.    Plaintiffs have failed to state a claim under *Bivens*. ............. 20

        b.    Plaintiffs have failed to state a claim under Section 1983. ................................................................... 21

      2.    Plaintiffs' federal malicious prosecution claim fails for the same reasons as their state-law claims. ........................................... 22

IV.    Conclusion ..................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................. 19

*Becker v. Kroll*,
    494 F.3d 904 (10th Cir. 2007) ................................................................. 23

*Berneike v. CitiMortgage, Inc.*,
    708 F.3d 1141 (10th Cir. 2013) ............................................................... 19

*Big Cats of Serenity Springs, Inc. v. Rhodes*,
    843 F.3d 853 (10th Cir. 2016) ................................................................. 22

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
    403 U.S. 388 (1971) ................................................................... 20, 21, 24

*Burnham v. Humphrey Hosp. Reit Trust, Inc.*,
    403 F.3d 709 (10th Cir. 2005) ................................................................. 16

*Carey v. Cont'l Airlines, Inc.*,
    823 F.2d 1402 (10th Cir. 1987) ............................................................... 22

*Champagne Metals v. Ken-Mac Metals, Inc.*,
    458 F.3d 1073 (10th Cir. 2006) ............................................................... 15

*Cohlmia v. St. John Med. Ctr.*,
    693 F.3d 1269 (10th Cir. 2012) ............................................................... 15

*Cordova v. City of Albuquerque*,
    816 F.3d 645 (10th Cir. 2016) ........................................................... 23, 24

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001) ........................................................................... 20, 21

*D.T. ex rel. M.T. v. Indep. Sch. Dist. No. 16*,
    894 F.2d 1176 (10th Cir.1990) ................................................................ 21

*Erikson v. Pawnee Cty. Bd. of Cty. Comm'rs*,
    263 F.3d 1151 (10th Cir. 2001) ............................................................... 25

*Gonzales v. FedEx Ground Package Sys., Inc,*
2013 WL 12080223 (S.D. Fla. Aug. 1, 2013) ............................................................... 21

*Guinn v. Farmers Ins. Co.,*
563 F. App'x 653 (10th Cir. 2014) ............................................................................. 21

*Haynes v. Crenshaw,*
166 F. Supp. 3d 773 (E.D. Tex. 2016) .......................................................................... 8

*Hetronic Int'l, Inc. v. Rempe,*
99 F. Supp. 3d 1341 (W.D. Okla. 2015) ..................................................................... 15

*How v. City of Baxter Springs,*
217 F. App'x 787 (10th Cir. 2007) ............................................................................. 22

*Indus. Constructors Corp. v. U.S. Bureau of Reclamation,*
15 F.3d 963 (10th Cir. 1994) ..................................................................................... 24

*Lee v. Town of Estes Park,*
820 F.2d 1112 (10th Cir. 1987) ................................................................................. 22

*Lownsberry v. Lees,*
2008 WL 4852791 (E.D. Mich. Nov. 7, 2008) ........................................................... 21

*M.G. v. Young,*
826 F.3d 1259 (10th Cir. 2016) ................................................................................. 25

*Margheim v. Buljko,*
855 F.3d 1077 (10th Cir. 2017) ................................................................................. 23

*McCarty v. Gilchrist,*
646 F.3d 1281 (10th Cir. 2011) ................................................................................. 25

*McKinney v. City of Oklahoma City,*
2013 WL 4849083 (W.D. Okla. Sept. 11, 2013) ........................................................ 18

*Metro Oil Co. v. Sun Ref. & Mktg. Co.,*
936 F.2d 501 (10th Cir. 1991) ................................................................................... 17

*Meyers v. Ideal Basic Indus., Inc.,*
940 F.2d 1379 (10th Cir. 1991) ................................................................................. 12

*Meyers v. Kruger,*
759 F. Supp. 770 (E.D. Okla. 1990), *aff'd,* 930 F.2d 34 (10th Cir. 1991) .................. 13

*Myers v. Koopman*,
   738 F.3d 1190 (10th Cir. 2013) .................................................................. 24

*N. Am. Ins. Agency, Inc. v. Bates*,
   2013 WL 6150781 (W.D. Okla. Nov. 22, 2013) ................................... 15, 19

*NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*,
   745 F.3d 742 (5th Cir. 2014) ...................................................................... 8

*Schaffer v. Salt Lake City Corp.*,
   814 F.3d 1151 (10th Cir. 2016) .................................................................. 22

*Schweiker v. Chilicky*,
   487 U.S. 412 (1988) .................................................................................... 20

*Sperry v. Maes*,
   592 F. App'x 688 (10th Cir. 2014) ............................................................. 23

*Van Sickle v. Holloway*,
   791 F.2d 1431 (10th Cir. 1986) .................................................................. 20

*Walden v. CDC*,
   669 F.3d 1277 (11th Cir. 2012) .................................................................. 20

*Wilkins v. DeReyes*,
   528 F.3d 790 (10th Cir. 2008) ............................................................. 23, 24

*Wilson v. Garcia*,
   471 U.S. 261 (1985) .................................................................................... 24

**State Cases**

*Anagnost v. Tomecek*,
   2017 OK 7, 390 P.3d 707.......................................................................... 7, 8

*Boyle Servs., Inc. v. Dewberry Design Grp., Inc.*,
   2001 OK CIV APP 63, 24 P.3d 878 ........................................................... 15

*Coleman v. Strong*,
   232 P. 378 (Okla. 1925) ............................................................................. 16

*Cooper v. Parker-Hughey*,
   1995 OK 35, 894 P.2d 1096........................................................................ 18

*Estrada v. Port City Props., Inc.*,
   2011 OK 30, 258 P.3d 495.......................................................................... 11

*Greenberg v. Wolfberg*,
    1994 OK 147, 890 P.2d 895.................................................................. 13, 16

*In re Lipsky*,
    411 S.W.3d 530 (Tex. App. 2013)................................................................. 9

*James v. Sw. Ins. Co.*,
    1960 OK 164, 354 P.2d 408........................................................................ 13

*Johnson-Todd v. Morgan*,
    480 S.W.3d 605 (Tex. App. 2015), *rev. denied* (Mar. 4, 2016).................... 9

*Murphy USA, Inc. v. Rose*,
    2016 WL 5800263 (Tex. App. Oct. 5, 2016)........................................... 9, 11

*Parker v. City of Midwest City*,
    1993 OK 29, 850 P.2d 1065....................................................................... 12

*Peterson v. Underwood*,
    2009 OK CIV APP 82, 220 P.3d 1158 ................................................. 12, 13

*Richards & Conover Steel Co. v. Nielsons, Inc.*,
    1988 OK 48, 755 P.2d 644........................................................................... 9

*Roberts v. Goodner's Wholesale Foods, Inc.*,
    2002 OK CIV APP 73, 50 P.3d 1149 ........................................................ 13

*Sanchez v. City of Sand Springs*,
    1990 OK 26, 789 P.2d 240......................................................................... 17

*Serafine v. Blunt*,
    466 S.W.3d 352 (Tex. App. 2015).............................................................. 9

*Steidley v. Cmty. Newspaper Holdings, Inc.*,
    2016 OK CIV APP 63, 383 P.3d 780 ...................................................... 8, 9

*Wright v. Keiser*,
    1977 OK 121, 568 P.2d 1262.................................................................... 16

*Young v. First State Bank, Watonga*,
    1981 OK 53, 628 P.2d 707................................................................... 12, 23

**Federal Statutes**

42 U.S.C. § 1983 .....................................................................*passim*

**State Statutes**

Okla. Stat. Title 12, § 95 ................................................................. 16, 17, 24

Okla. Stat. Title 12, § 1430(B) ............................................................. 7

Okla. Stat. Title 12, § 1431(4)(a)(1) ................................................... 9, 11

Okla. Stat. Title 12, § 1431(4)(a)(2) ........................................................ 9

Okla. Stat. Title 12, § 1431(4)(b) ............................................................ 9

Okla. Stat. Title 12, § 1431(4)(c) ........................................................ 9, 10

Okla. Stat. Title 12, § 1431(4)(e) ........................................................ 9, 11

Okla. Stat. Title 12, § 1431(7) ................................................................ 9

Okla. Stat. Title 12, § 1434(B) ................................................................ 8

Okla. Stat. Title 12, § 1434(C) ........................................................... 8, 11

Okla. Stat. Title 12, § 1434(D) ................................................................ 8

Okla. Stat. Title 12, § 1438(A) ................................................................ 8

Okla. Stat. Title 12, § 1440 .................................................................... 7

Texas Citizens Participation Act, Tex. Civ. Prac. & Rem. Code Ann. §
    27.001 *et seq.* ............................................................................. 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................. 1, 2, 19

**Constitutional Provisions**

U.S. Const., Amend. IV ................................................................... 20, 23

U.S. Const., Amend. XIV .................................................................. 20, 24

# I.     INTRODUCTION

Plaintiffs are a Ninnekah–based computer company and its two principals. They have sued Defendant Microsoft Corporation ("Microsoft") for cooperating with law enforcement in a software piracy investigation involving Plaintiffs' sale of unlicensed software to public schools from 2007 to 2011. As a result of the investigation, the U.S. Department of Justice brought a civil forfeiture action ("DOJ Action") and the Oklahoma Attorney General filed criminal charges ("AG Action"). Both actions settled.

Plaintiffs allege against Microsoft claims for malicious prosecution under Oklahoma law (Fourth Cause of Action) and tortious interference with business relationships and expectancies (Sixth Cause of Action). The Court should dismiss both under the Oklahoma Citizens Participation Act ("OCPA") or alternatively Fed. R. Civ. P. 12(b)(6). The OCPA, enacted in 2014, is designed to deter meritless claims that target public participation and petition, such as Microsoft's cooperation with the government, by requiring a heightened showing on the merits at the outset. Whether under that standard or Rule 12(b)(6), Plaintiffs' claims fail. Their state malicious prosecution claim does not allege two required elements: the actions terminated in Plaintiffs' favor (Plaintiffs admit both *settled*), and there was a want of probable cause (Plaintiffs admit *a court* found sufficient evidence for trial). The interference claim fails because Plaintiffs do not plead sufficient allegations to establish *any* of the elements of that claim. And, on the face of the First Amended Complaint, Dkt. 31 ("FAC"), the statutes of limitations bar both claims. The only conduct pleaded within the limitations period targets Microsoft's testimony in the AG Action, for which Microsoft has absolute immunity.

1

Plaintiffs also bring a malicious prosecution claim under the federal constitution (Fifth Cause of Action) that the Court should dismiss under Rule 12(b)(6).[1] As a threshold matter, Plaintiffs fail to allege any cause of action authorizing a claim for damages against a private party for constitutional violations. But even if the Court liberally construes their complaint to allege a cause of action, Plaintiffs' federal malicious prosecution claim fails for the same reasons as their state malicious prosecution claim: the DOJ Actions and AG Action settled, Microsoft acted with probable cause, and the statute of limitations bars any claim based on the DOJ Action.

For these reasons, Microsoft respectfully asks the Court to dismiss this lawsuit with prejudice, award Microsoft its attorneys' fees and costs, and impose meaningful sanctions against Plaintiffs under the OCPA.

## II.    FACTUAL BACKGROUND

### A.    Microsoft Investigates Complaints of Plaintiffs' Software Piracy.

Microsoft is a leading global software and technology company that develops, distributes, and licenses computer software. Declaration of Tom Montgomery ("Montgomery Decl."), attached as Exhibit 1, ¶ 3. Microsoft has numerous registered copyrights and trademarks protecting its Windows operating system. *Id.*

In May 2009, an owner of an Oklahoma computer business, Derrick Thornton, contacted Microsoft to say he repaired computers with unauthorized Microsoft software that Plaintiff Craig PC Sales & Service, LLC ("Craig PC) sold to Oklahoma schools. *Id.* ¶ 4. This was not the first time someone had complained to Microsoft about Craig PC. On

---

[1] The OCPA does not apply to federal claims.

June 13, 2002, Microsoft received an anonymous complaint on its Anti-Piracy Hotline that Craig PC had not provided licensing documents for Microsoft software loaded on computers it sold to public schools. *Id.* ¶ 7. On February 1, 2005, a Craig PC customer reported to Microsoft that Craig PC had also failed to provide proper documents with her computer and installed software using an invalid product identification number.[2] *Id.* ¶ 8.

Given the complaints and importance of protecting intellectual property, Microsoft sent three investigators—Miles Hawkes, Tom Montgomery and Ray Bradley—to Oklahoma in June 2009. *Id.* ¶¶ 10-11. They interviewed Mr. Thornton, who confirmed he worked on computers with unlicensed software that Craig PC sold to Oklahoma schools. *Id.* ¶ 11. They also interviewed a former Craig PC employee, who reported that Craig PC often loaded Microsoft software from a "master disk," rather than individually purchased copies; used a single product key for multiple copies; and did not provide required documents with most of the computers it sold. *Id.* ¶ 12. In June and July 2009, Microsoft's investigators visited two schools to inspect computers purchased from Craig PC. *Id.* ¶¶ 13, 15. Microsoft found that the majority of computers at both districts had improperly licensed software and no Certificates of Authenticity ("COAs"), which Microsoft requires be affixed to computers sold by vendors like Craig PC. *Id.* Also in June 2009, Microsoft purchased three computers from Craig PC and discovered they, too, had software installed that was not properly licensed. *Id.* ¶ 14.

---

[2] The customer also reported that the software did not have a "Certificate of Authenticity" ("COA"), which Microsoft requires be affixed to all computers. The COA is evidence that the software is properly licensed. Montgomery Decl. ¶ 8.

### B.    The United States Brings a Civil Action, Which Plaintiffs Settle.

In July 2009, Microsoft reported Plaintiffs' conduct to the FBI. *Id.* at ¶ 16. Over the next few years, FBI Special Agent Deborah Decker led an investigation, interviewing witnesses and inspecting computers Craig PC had sold. For example, Decker re-interviewed Mr. Thornton. Declaration of Ambika K. Doran ("Doran Decl."), attached as Exhibit 2, Ex. B ("Decker Test.") at 45:1–3; 87:2–23. Decker also inspected computers at 21 school districts, interviewed people at each school, and conducted other interviews with Craig PC customers. *Id.* at 45:18–22; 48:8–12. Decker executed a search warrant on Craig PC, and interviewed four Craig PC employees and the company's owners, Ray T. Craig Sr. ("Craig Sr.") and Ray T. Craig Jr. ("Craig II"). *Id.* at 55:1–18, 68:22–69:2.

Decker asked for Microsoft's help because it "had the technology that we needed to check the computers to see what operating systems the computers were running." *Id.* at 44:18–22; *see also id.* at 44:23–25 (noting it was "common" for the FBI to work with a private party). She testified that Mr. Bradley's role at school inspections and the search of Craig PC was primarily limited to "tell[ing] us what operating system was running on the computer and who that operating system belonged to." *Id.* at 48:18–24. Decker conducted the interviews, *id.* at 48:25–49:1, and decided which computers to inspect. *Id.* at 49:15–17. Microsoft investigator Monty Montgomery was also present for some of the inspections, *id.* at 48:13–17, and his role was similarly limited. Montgomery Decl. ¶ 17.

The FBI's inspections revealed that operating systems on 64 percent of the computers Craig PC sold to the 21 schools were unlicensed. Decker Test. at 79:25–80:4. Based on this finding and witness interviews, in January 2011, the United States obtained

search and seizure warrants for Plaintiffs' property. FAC ¶¶ 72, 74; Doran Decl. Ex. G. On June 22, 2011, the FBI filed a civil forfeiture action. Decker Test. at 80:16–22; Doran Decl. Ex. E. On December 14, 2012, the government filed an amended complaint, attaching a probable cause affidavit signed by Decker. FAC ¶ 81; Doran Decl. Exs. F–G. On June 3, 2014, Plaintiffs settled the civil case, agreeing to pay $250,000 and release claims against the government. *Id.* at Exs. H–J; FAC ¶ 90.

### C.    Oklahoma Brings a Criminal Action, Which Plaintiffs Settle.

On November 5, 2014, the State brought felony criminal charges against Craig Sr. and Craig II, for conspiracy to defraud the State by selling infringing software to public schools. FAC ¶ 92; Doran Decl. Ex. L. Decker supplied an affidavit, which stated:

> Information provided by Microsoft and the other witnesses was verified through on-site investigation at the schools. The investigation revealed that approximately fifty school districts across the state of Oklahoma had done business with Craig Computer from January 2007 to November 2010. The top twenty-one (21) schools, in terms of amount of money paid to Craig Computer during that time period, were selected for site visits. At each school, a number of computers were examined by the FBI and Microsoft investigators to determine if the computers contained copyright-infringed Microsoft software. Copyright-infringed Microsoft operating systems were found at almost every school. Likewise, several other types of customers of Craig Computer were selected for examination of their computers. These included commercial business customers, individual customers, other government customers, and one church customer. As with the school customers, the computers which belonged to these other types of customers were often found to have copyright-infringed Microsoft operating systems.

Doran Decl. Ex. M; FAC ¶ 92.

Evidence at a preliminary hearing showed that from 2007 through 2011, Craig PC sold 2,335 computers to 21 Oklahoma schools, of which 1,496 had no license for Microsoft software. Decker Test. at 78:18–22. Former Craig PC employee Jeff Goodman

testified he used a single master disk to load Microsoft software on computers for Craig PC's customers; Craig PC did not provide COAs; and he used a single product key to activate all Microsoft software. Doran Decl. Ex. A at 68:1–25; 69:20–70:9. Mr. Bradley and a Microsoft licensing expert testified this conduct infringed Microsoft's licenses, and inspections at schools showed Plaintiffs had sold computers without licensed software. *See* Doran Decl. Ex. C at 119:8–17; Ex. D at 156:21–25. The court concluded the State had demonstrated probable cause and bound Plaintiffs over for trial. FAC ¶ 95.

On September 13, 2016, the parties reached a "global" settlement in the AG Action. Doran Decl. Ex. N ("September 13, 2016 Hearing") at 4:22–5:4, 5:11–13 (state describing dismissal as "global recommendation and plea agreement"; Craig II's counsel describing deal as "global plea arrangement."). Craig Sr. pled no contest to a misdemeanor, and the State dropped the charges against Craig II. FAC ¶¶ 97–99.

### D.   Plaintiffs Sue Microsoft's Reseller and Three Years Later, Sues Microsoft for its Statements to Law Enforcement and the Court.

On January 14, 2014, Plaintiffs filed suit against co-Defendant CDW Government LLC ("CDW"), a reseller of Microsoft software, in Grady County District Court. Dkt. 2-1. Among other things, Plaintiffs allege that CDW told them they could engage in the infringing conduct by instructing Craig PC that it could use a "volume license" to cover the operating system itself, even though it only covers upgrades. FAC ¶¶ 30, 33–35.[3]

Plaintiffs waited nearly three years to serve CDW. In January 2017, CDW removed the case, and asked this Court to dismiss it. Dkt. 1, 17. The Court permitted

---

[3] According to CDW, Plaintiffs initially filed suit against it on January 23, 2013, alleging the same claims, and later voluntarily dismissed the suit. *See* Dkt. 17 at 2.

Plaintiffs to file an amended complaint, Dkt. 26, which they did April 24, 2017, Dkt. 31.

In the FAC—nearly *eight years* after Microsoft first contacted the FBI—Plaintiffs named Microsoft as a defendant. Plaintiffs do not dispute they engaged in the conduct the FBI and Microsoft discovered, but instead fault Microsoft for reporting it to the FBI and testifying in the AG Action. *See, e.g.*, FAC ¶¶ 58–60, 82–86, 93–96, 101–03. They assert claims for malicious prosecution under state and federal law, alleging "Microsoft caused a federal criminal investigation and state criminal action to be brought," *id.*¶¶ 133, 142; and a claim for intentional interference with contractual relations and prospective economic advantage, alleging Microsoft "intentionally interfered" with their relationships by "making the false statements that Plaintiffs' [sic] violated Microsoft's copyright in 2014 and 2015." *Id.* ¶¶ 151, 153.

## III.    ARGUMENT

### A.    This Court Should Strike Plaintiffs' State-Law Claims Under the Oklahoma Citizens Participation Act.

In 2014, Oklahoma joined numerous states that have enacted laws to "counteract lawsuits commonly known as SLAPP suits[,] or strategic lawsuits against public participation[,] which are aimed at deterring public participation in decision-making forums." *Anagnost v. Tomecek*, 2017 OK 7, 390 P.3d 707, 710. *See also* Okla. Stat. tit. 12, § 1430(B) (aim of law is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely and otherwise participate in government"). The Oklahoma Legislature directed that the OCPA "be construed liberally to effectuate its purpose and intent fully." Okla. Stat. tit. 12, § 1440.

The OCPA allows a party to file a motion to dismiss at the outset. If the defendant can show the lawsuit is based on, related to, or responds to its exercise of its right to free speech, petition, or association, the court ***must*** dismiss the case unless the plaintiff shows by "clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.*, § 1434(C). Even if the plaintiff does so, the court must dismiss the case if the defendant shows by a "preponderance of the evidence each essential element of a valid defense." *Id.*, § 1434(D). If a court grants the motion, it "shall" award the moving party costs, attorneys' fees, and sanctions needed to deter future similar actions. *Id.*, § 1438(A). For the following reasons, the OCPA bars Plaintiffs' state-law claims.[4]

### 1.    The OCPA applies to plaintiffs' state-law claims.

To invoke the OCPA, the moving party must show by a "preponderance of the evidence that the legal action is based on, relates to or is in response to the party's exercise of . . . (1) the right of free speech; (2) the right to petition; or (3) the right of association." Okla. Stat. tit. 12, § 1434(B). Because both Plaintiffs' state-law claims target Microsoft's exercise of its free speech and petition rights, the statute applies here.

The OCPA defines "exercise of the right to petition" as including "a communication in or pertaining to . . . (1) a judicial proceeding . . . [or] (3)

---

[4] The OCPA governs state-law claims in federal court because it creates substantive rights. *See Anagnost*, 390 P.3d at 712 ("[T]he OCPA affects substantive rights. . . ."); *Steidley v. Cmty. Newspaper Holdings, Inc.*, 2016 OK CIV APP 63, 383 P.3d 780, 789 ("[T]he addition of a new defense and mandatory attorney fees reflects a substantive change. . . ."); *see also NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 753 (5th Cir. 2014) (applying Texas's nearly identical anti-SLAPP statute); *Haynes v. Crenshaw*, 166 F. Supp. 3d 773, 776 (E.D. Tex. 2016) ("[T]he TCPA is enforceable in a federal court sitting in diversity jurisdiction.").

a[] . . . proceeding before a department or agency of the state or federal government"; a "communication in connection with an issue under" or "likely to encourage" "consideration or review" "by a legislative, executive, judicial or other governmental body"; and "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the Oklahoma Constitution." *Id.*, § 1431(4)(a)(1)-(2), 4(b), 4(c), 4(e). The OCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern," which, in turn, includes "an issue related to: (a) health or safety, (b) environmental, economic or community well-being, (c) the government . . . or (e) a good, product or service in the marketplace." *Id.*, § 1431(7).

Interpreting its nearly identical law, Texas courts apply this language to claims based on statements to government and in judicial proceedings, including allegedly false statements to law enforcement, *Murphy USA, Inc. v. Rose*, 2016 WL 5800263, at *3 (Tex. App. Oct. 5, 2016); filing of a lawsuit, *Serafine v. Blunt*, 466 S.W.3d 352, 356 (Tex. App. 2015); statements to encourage review by a federal agency, *In re Lipsky*, 411 S.W.3d 530 (Tex. App. 2013); and statements in court proceedings, *Johnson-Todd v. Morgan*, 480 S.W.3d 605, 609 (Tex. App. 2015), *rev. denied* (Mar. 4, 2016).[5]

---

[5] Although no court has interpreted these definitions, the Oklahoma law is modeled on the Texas Citizens Participation Act, Tex. Civ. Prac. & Rem. Code Ann. § 27.001 *et seq.*, meaning Texas cases are persuasive. *See Steidley*, 383 P.3d at 790 (Texas statute is "almost identical to the OCPA"); *Richards & Conover Steel Co. v. Nielsons, Inc.*, 1988 OK 48, 755 P.2d 644, 648 ("The fact that a statute is an exact transcript of an earlier statute of a sister state is persuasive evidence of a re-enactment of the statute of the sister jurisdiction.").

Applying the OCPA's language, and considering the Texas decisions interpreting the same language, Plaintiffs' state-law claims target the exercise of Microsoft's rights to petition and free speech. The crux of *all* the claims is that Microsoft (purportedly falsely) told the FBI and testified in court that Plaintiffs had violated Microsoft's copyrights by failing to secure licenses for software. Plaintiffs' malicious prosecution claim alleges Microsoft thereby "caused a federal criminal investigation and state criminal action to be brought against" Craig PC and Craig II. FAC ¶ 133.[6] Plaintiffs' tortious interference claim, too, is based on allegedly false statements to the FBI and court. *See id.* ¶ 153 (alleging Microsoft tortiously interfered "by making the false statements that Plaintiffs' [sic] violated Microsoft's copyright in 2014 and 2015").

While Microsoft disputes its employees and agents made false statements to law enforcement, even taking Plaintiffs' (false) allegations to be true, Microsoft's statements to law enforcement and the state court were an exercise of its rights to petition and free speech under the OCPA. First, Microsoft's reports to the law enforcement were likely to encourage "consideration or review of an issue by a[n] . . . executive, judicial or other governmental body." Okla. Stat. tit 12, § 1431(4)(c). Second, Microsoft's in-court testimony not only *pertained to* a judicial proceeding but was made *in* such a proceeding.

---

[6] *See also, e.g.*, *id.* ¶¶ 57-61, 68-69 (alleging Microsoft made false statements to FBI); ¶¶ 74-75 ("Based on false information provided by Microsoft . . . Magistrate Judge Purcell signed search and seizure warrants . . . ."); ¶ 87 ("Microsoft's continued representations to SA Decker caused the continuation of the investigation into Plaintiffs' business activities."); ¶¶ 93–96 (testimony by Microsoft employee that Plaintiffs violated Microsoft's copyright "led to the state criminal charges" and finding of probable cause); *id.* ¶ 102 ("Microsoft made false allegations . . . that [Plaintiffs] violated its copyright").

*See* FAC ¶¶ 93–96. Third, statements the FBI used in court that Microsoft had made "pertain[ed]" to "a judicial proceeding." Okla. Stat. tit 12, § 1431(4)(a)(1). Fourth, all of Microsoft's allegedly unlawful conduct was an exercise of its petition rights under the United States and Oklahoma Constitutions. *Id.*, § 1431(4)(e); *see Murphy USA*, 2016 WL 5800263, at *3 ("Filing a police report, whether true or false, implicates a person's right to petition the government."). Finally, all of Microsoft's statements were in exercise of its right to free speech on a matter of public concern. The statements concerned "economic and community well-being" (i.e., potential fraud and software piracy), "the government" (i.e., Plaintiffs' school district customers), and "a good, product or service in the marketplace" (i.e., Microsoft software). Microsoft has met its burden to prove that the OCPA applies to Plaintiffs' state-law claims.

## 2.    Plaintiffs cannot meet their burden under the OCPA.

Because the OCPA governs Plaintiffs' state-law claims, Plaintiffs must show by "clear and specific evidence a prima facie case for each essential element of the claim in question." Okla. Stat. tit. 12, § 1434(C). "Clear" means "unambiguous, sure or free from doubt," and "specific" means "explicit or relating to a particular named thing." *Murphy USA*, 2016 WL 5800263, at *2 (quoting *In re Lipsky*, 460 S.W.3d 579, 590-91 (Tex. 2015)). "A 'prima facie case' is 'the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true,'" and "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.*[7] The

---

[7] *See also Estrada v. Port City Props., Inc.*, 2011 OK 30, 258 P.3d 495, 504 n.34 ("A prima facie case is made out by that quantum of proof which, if unexplained or

11

OCPA "requires more than mere notice pleading. Instead, *a plaintiff must provide enough detail to show the factual basis for its claim*." *Id.* (emphasis added) (citation omitted). "[E]ven if the nonmovant makes [the clear and specific] showing, the trial court must dismiss the cause of action if the movant 'establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim.'" *Id.* Applying this standard, the Court should dismiss Plaintiffs' state-law claims.

### a.    Plaintiffs have failed to allege, much less provide evidence, of malicious prosecution.

"Malicious prosecution actions are disfavored by the Oklahoma courts, and the elements of the action are narrowly construed." *Meyers v. Ideal Basic Indus., Inc.*, 940 F.2d 1379, 1383 (10th Cir. 1991); *Young v. First State Bank, Watonga*, 1981 OK 53, 628 P.2d 707, 709. Such a claim requires proving five elements: "(1) the bringing of the original action by the defendant; (2) its successful termination in favor of the plaintiff; (3) want of probable cause to bring the action; (4) malice; and (5) damages." *Parker v. City of Midwest City*, 1993 OK 29, 850 P.2d 1065, 1067. Plaintiffs—who base their claim on the allegation Microsoft "caused a federal criminal investigation and state criminal action to be brought against" them, FAC ¶ 133—have failed to allege (and cannot provide evidence of) a malicious prosecution claim.

First, an "investigation" is not an "action," so Plaintiffs cannot base their claim on the federal investigation. *See Peterson v. Underwood*, 2009 OK CIV APP 82, 220 P.3d 1158, 1163 ("Malicious prosecution has been defined as a suit for damages brought by

uncontradicted, is sufficient to establish a given fact and to uphold a judgment in favor of the issue which it supports.").

one against whom a ***criminal prosecution, civil suit, or other legal proceeding*** has been instituted maliciously and without probable cause, after termination of the former proceeding in his favor." (emphasis added)).

Second, neither the DOJ nor AG Actions terminated in Plaintiffs' favor; instead, both settled.[8] FAC ¶¶ 90, 97–99; September 13, 2016 Hearing at 4:25–5:3, 5:11–13 (Craig II's counsel describing "global" agreement, in which his father pled no contest to a misdemeanor and state agreed to drop charges against Craig II). "The Oklahoma Supreme Court has consistently recognized the well-established principle that where a termination of a prosecution is pursuant to a compromise or settlement, a later action for malicious prosecution is barred." *Meyers v. Kruger*, 759 F. Supp. 770, 772 (E.D. Okla. 1990), *aff'd*, 930 F.2d 34 (10th Cir. 1991).

Third, Plaintiffs have not sufficiently alleged (and could not provide "clear and specific evidence") that the DOJ and AG Actions were initiated without probable cause. *See Greenberg v. Wolfberg*, 1994 OK 147, 890 P.2d 895, 904. Probable cause exists if "the facts and circumstances known to the defendant were such as to justify a person of prudence and caution to reasonably believe that the action of filing suit against the plaintiff was justified, either at common law or under an existing statute." *Peterson*, 220 P.3d at 1164. Notably, "the fact that upon preliminary hearing plaintiff was bound over for trial … show[s] probable cause." *James v. Sw. Ins. Co.*, 1960 OK 164, 354 P.2d 408, 412, *see also Roberts v. Goodner's Wholesale Foods, Inc.*, 2002 OK CIV APP 73, 50

---

[8] Craig PC and Craig II—not Craig Sr.—bring malicious prosecution claims. FAC ¶ 133. But Craig PC was never charged so it cannot bring such a claim.

P.3d 1149, 1152.

Here, Microsoft investigated Craig PC only after receiving numerous complaints over several years. Montgomery Decl. ¶¶ 4–9. It diligently investigated and determined the evidence was sufficient to make a report to the FBI. *Id.* ¶¶ 10–15. The FBI independently investigated Craig PC. *See* Decker Test. at 45:1–2, 45:18-22, 48:8-12, 55:1–18, 87:4–23. The evidence the FBI obtained allowed federal authorities to secure search and seizure warrants from a federal judge, *see* FAC ¶¶ 72, 74, and pursue a civil forfeiture action, which Plaintiffs settled for $250,000. *See* Doran Decl. Exs. H–K.

The evidence the FBI gathered also provided support for the State to bring criminal charges. Plaintiffs admit that after a preliminary hearing, they were bound over for trial in the state court action. FAC ¶ 95. And they do not even dispute they engaged in the conduct that led to the DOJ or AG Actions. Instead, they say they acted consistent with guidance from unnamed CDW and Microsoft employees. *See, e.g.*, FAC ¶ 33–35 (alleging Microsoft, "through various employees," condoned the act); ¶ 73 (Plaintiffs' actions "were in compliance with instructions provided by Defendant CDWG, necessarily with approval from Microsoft…."). This speculative and conclusory pleading is insufficient to allege a claim, when compared with the evidence against Plaintiffs.[9]

### b.    Plaintiffs have also failed to allege tortious interference.

To allege a claim for tortious interference with either a contractual relationship or business expectancy, Plaintiffs must show: "(1) the existence of a valid business relation

---

[9] Even if Plaintiffs had evidence Microsoft employees made these representations, they could not show an absence of probable cause: Microsoft's licenses forbid the parties from amending the license's terms without a written amendment. *See* Montgomery Decl. ¶ 20.

or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) an intentional interference including or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been disrupted." *Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1286–87 (10th Cir. 2012); *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1093 (10th Cir. 2006); *Boyle Servs., Inc. v. Dewberry Design Grp., Inc.*, 2001 OK CIV APP 63, 24 P.3d 878, 880. Where a plaintiff fails to allege facts to support each element, courts dismiss tortious interference claims. *See Hetronic Int'l, Inc. v. Rempe*, 99 F. Supp. 3d 1341, 1350 (W.D. Okla. 2015) (dismissal where counterclaim defendant did not allege it "had a 'reasonable assurance' of obtaining the prospective business relations," nor "identify which prospective customer relationships were interfered with or how [plaintiffs'] actions [] caused the interference"); *N. Am. Ins. Agency, Inc. v. Bates*, 2013 WL 6150781, at *11 (W.D. Okla. Nov. 22, 2013) (dismissing claim; plaintiffs did not allege "which … relationships with plaintiffs were interfered with, what improper and unfair means defendants used to interfere with the relationships, what specific damage was caused, and how the alleged interference caused the alleged damages").

Plaintiffs have failed to provide anything beyond conclusory allegations to support their tortious interference claim—and certainly not "clear and specific" evidence. Plaintiffs allege only that Microsoft "interfered with Plaintiffs' valid business relationship and expectancy" with "various school districts and private clients." FAC ¶¶ 151, 153. Plaintiffs have not identified a relationship with which Microsoft interfered, nor facts suggesting Microsoft knew about the relationship or that its actions caused any

interference or damages. The Court should dismiss Plaintiffs' tortious interference claim.

        **c.**      **The statute of limitations bars the majority of Plaintiffs' state-law claims.**

The statute of limitations is designed "to suppress and prevent fraudulent and stale claims from springing up after the expiration of long periods of time and surprising parties, or their representatives, when evidence is lost, memories have faded and witnesses are missing or dead." *Wright v. Keiser*, 1977 OK 121, 568 P.2d 1262, 1263-64 (citing *Adams v. Coon*, 1913 OK 1, 129 P. 851). Such laws "are intended to run against those who are neglectful of their rights and fail to use reasonable and proper diligence in enforcing them." *Id.* at 1264 (citing *Seitz v. Jones*, 1961 OK 283, 370 P.2d 300). The applicable statutes of limitations bar: (1) Plaintiffs' malicious prosecution claim to the extent it is based on the DOJ Action; and (2) Plaintiffs' tortious interference claims.

A one-year statute of limitations governs malicious prosecution claims. Okla. Stat. tit. 12, § 95.[10] The statute starts to run upon termination of the underlying action. *See Greenberg*, 890 P.2d at 904; *Coleman v. Strong*, 232 P. 378, 379 (Okla. 1925). Even assuming Plaintiffs intended their claim based on the "federal investigation" to be based on the DOJ Action, that action ended June 3, 2014, when Plaintiffs settled the federal lawsuit. FAC ¶ 90. The statute of limitations for any malicious prosecution claim expired June 3, 2015. But Plaintiffs did not file suit against Microsoft until April 25, 2017, and therefore any malicious prosecution claim based on the DOJ Action is time-barred.

---

[10] Because this Court has diversity jurisdiction over Plaintiffs' state-law claims, it "applies state law for statute of limitations purposes." *Burnham v. Humphrey Hosp. Reit Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005).

A two-year statute of limitations bars Plaintiffs' tortious interference claim. Okla. Stat. tit. 12, § 95. "Under Oklahoma case law, a cause of action accrues upon the date the tortious act, or the happening of the breach." *Metro Oil Co. v. Sun Ref. & Mktg. Co.*, 936 F.2d 501, 504 (10th Cir. 1991) (affirming dismissal of tortious interference claim based on statute of limitations; applying Oklahoma law). Plaintiffs, therefore, cannot assert a tortious interference claim based on conduct that pre-dates April 24, 2015. Plaintiffs allege, in conclusory fashion, that the interference stems from "false statements . . . in 2014 and 2015." FAC ¶ 153. But the only "false statements" Plaintiffs allege Microsoft made after April 24, 2015, are in testimony in the AG Action. *Id.* ¶ 93. As explained below, that testimony is absolutely privileged under Oklahoma law. *See* Section III.A.2.d. The remainder of Plaintiffs' tortious interference claim is time-barred.

Recognizing their claims are stale, Plaintiffs allege Microsoft is "equitably estopped" from asserting the statute of limitations bars the malicious prosecution claim. FAC ¶ 137. Under Oklahoma law, equitable estoppel can exist in three circumstances— where the defendant makes "(a) some assurance of settlement negotiations reasonably calculated to lull the plaintiff into a sense of security and delay"; "(b) an express and repeated admission of liability in conjunction with promises of payment, settlement or performance"; or "(c) any false, fraudulent or misleading conduct or some affirmative act of concealment to exclude suspicion and preclude inquiry" by the plaintiff. *Sanchez v. City of Sand Springs*, 1990 OK 26, 789 P.2d 240, 241 (quoting *Jarvis v. City of Stillwater*, 1987 OK 5, 732 P.2d 470, 472–73). Plaintiffs make no allegation—nor can they provide evidence—to suggest Microsoft engaged in this conduct.

Plaintiffs have not diligently pursued their claims. As early as January 2011—when their assets were seized—Plaintiffs knew about their claim. FAC ¶ 77. They settled the DOJ Action in 2014. *Id.* ¶ 90. Microsoft testified at the preliminary hearing in the AG Action in 2015. *Id.* ¶ 93. It was not until 2017, however, that Plaintiffs pursued claims against Microsoft. In the interim, at least one key witness, Microsoft investigator Miles Hawks, has died. Montgomery Decl. ¶ 5. Further, given the years that have passed, it will be difficult (if not impossible) for Microsoft to locate many witnesses for this case.[11] *See id.* at ¶¶ 19–20. Equity does not toll the statute of limitations here; rather, it weighs in favor of barring Plaintiffs from pursuing their stale claims.

### d. Microsoft's statements to the state court are privileged.

Finally, Plaintiffs are wrong to suggest Microsoft can be responsible for statements made in the AG Action preliminary hearing. Oklahoma provides an absolute immunity for witnesses testifying in a judicial proceeding. *See Cooper v. Parker-Hughey*, 1995 OK 35, 894 P.2d 1096, 1099 ("[W]e embrace the common law immunity for witnesses in judicial proceedings from civil action based upon the testimony given in those judicial proceedings."); *McKinney v. City of Oklahoma City*, 2013 WL 4849083, at *2 (W.D. Okla. Sept. 11, 2013) (applying immunity to preclude abuse of process claim for allegedly perjured testimony). Plaintiffs' claims as they relate to the AG Action are

---

[11] Microsoft's investigation of Plaintiffs was prompted by complaints starting ***fifteen years*** ago, and the complainants may be difficult if not impossible to locate. *See* Montgomery Decl. ¶ 7. Further, Plaintiffs' claims hinge on statements made by "Defendant Microsoft, through various employees." *See* FAC ¶¶ 33–35. Finding employees who may or may not have made statements to Plaintiffs two decades ago could also be extremely difficult. Montgomery Decl. ¶ 20.

based on the testimony of two Microsoft personnel at a preliminary hearing. FAC ¶¶ 93–96. That testimony is protected, and Plaintiffs' claims predicated on the AG Action are barred as a matter of law.

### B.    The Court Should Dismiss Plaintiffs' Claims Under Rule 12(b)(6).

Under Rule 12(b)(6), "[a] court 'must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'" *N. Am. Ins. Agency*, 2013 WL 6150781, at *3 (quoting *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).[12] Here, Plaintiffs have failed to adequately allege ***any*** of their claims. Even if the Court does not apply the OCPA to the state-law claims, they fail under Fed. R. Civ. P. 12(b)(6) for the same reasons in Section III.A.2 above. Likewise, Plaintiffs' federal malicious prosecution claim is also barred because Plaintiffs have failed to allege a proper cause of action and for the reasons described in Section III.A.2 above.

---

[12] In a Rule 12(b)(6) motion, a court may consider documents incorporated by reference in the complaint, and which are central to the complaint's allegations. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). For the purposes of its rule 12(b)(6) arguments, Microsoft relies only on the FAC and filed records and official proceedings from the DOJ and AG Actions on which the FAC relies. *See* Doran Decl. Exs. A–D (FAC ¶¶ 93–95, 102, 135, 144, 153); Ex. E (FAC ¶ 80); Exs. F–G (FAC ¶¶ 85–87); Exs. H–K (FAC ¶ 90); Exs. L–M (FAC ¶ 92); Ex. N (FAC ¶¶ 97–99).

1.  **Plaintiffs have failed to allege a cause of action for violation of federal constitutional rights.**

Plaintiffs purport to seek damages for an alleged violation of their rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, which they style as a malicious prosecution claim. *See* FAC ¶ 141. Plaintiffs, however, fail to identify the cause of action that permits them such recovery. Even if the Court construes the Complaint as alleging a violation under the two primary avenues for such a claim— *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (permitting certain constitutional claims against federal officials) or 42 U.S.C. § 1983 (analog for claims against state or local officials)—dismissal is still warranted.

a.  **Plaintiffs have failed to state a claim under *Bivens*.**

Absent a statute authorizing a cause of action, federal courts may imply a cause of action for a constitutional tort. *See generally Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988). The Supreme Court first did so in *Bivens*, implying a cause of action for damages against federal officers for Fourth Amendment violations. *See id. Bivens* is limited to claims based on federal action. *See Van Sickle v. Holloway*, 791 F.2d 1431, 1435 n.4 (10th Cir. 1986). In addition, the Court has declined to extend *Bivens* to claims against private corporations allegedly acting under federal authority. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001) (declining to create an implied cause of action against a private company operating a prison); *see also, e.g.*, *Walden v. CDC*, 669 F.3d 1277, 1291 (11th Cir. 2012) (*Malesko* foreclosed constitutional tort claim against federal government contractor); *Lownsberry v. Lees*, 2008 WL 4852791, at *4 (E.D. Mich. Nov. 7, 2008)

20

("[A]n entity is not held accountable for a constitutional violation under *Bivens*." (citing *Malesko*, 534 U.S. at 74)); *Gonzales v. FedEx Ground Package Sys., Inc*, 2013 WL 12080223, at *4 (S.D. Fla. Aug. 1, 2013) ("Plaintiffs are foreclosed from bringing a cause of action under *Bivens* for constitutional violations against FedEx as a private entity.").

Under this authority, Plaintiffs cannot prevail on a malicious prosecution claim under *Bivens*. To the extent Plaintiffs rely on Microsoft's assistance to the FBI, the Supreme Court has declined to extend *Bivens* to allow such claims. Stated another way, the Supreme Court has refused to imply a cause of action against private companies (Microsoft) acting pursuant to federal authority (cooperating with the FBI) for constitutional violations. *But see* FAC ¶ 146 ("Microsoft acted at all times under color of state law because it acted in [a] concerted and joint effort with SA Decker and the FBI."). Accordingly, Plaintiffs have not stated a claim for malicious prosecution under *Bivens*.

### b.    Plaintiffs have failed to state a claim under Section 1983.

Even if Plaintiffs intended to invoke Section 1983, their claim would still fail. Section 1983 permits claims for the "deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. The statute requires alleging (1) action under color of state law (2) that deprives plaintiff of a constitutional right. *See Guinn v. Farmers Ins. Co.*, 563 F. App'x 653, 654 (10th Cir. 2014); *D.T. ex rel. M.T. v. Indep. Sch. Dist. No. 16*, 894 F.2d 1176, 1186 (10th Cir.1990). Section 1983 does not apply to federal officials. *See, e.g.*, *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 869 (10th Cir. 2016) ("Section 1983 is not directed at conduct by federal officials. Instead, it provides a remedy against state actors who violate a federal right . . . .").

A private party acts under color of state law when there is "joint action" between it and the government. *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1157 (10th Cir. 2016). But the Tenth Circuit has "consistently held that furnishing information to law enforcement officers, without more, does not constitute joint action under color of state law." *Id.*; *see also Lee v. Town of Estes Park*, 820 F.2d 1112, 1115 (10th Cir. 1987) (court "disinclined" to deem private party a state actor for "simply reporting suspected criminal activity to state officials who then take whatever action they believe the facts warrant"—even if party is "insistent" authorities take action); *How v. City of Baxter Springs*, 217 F. App'x 787, 793 (10th Cir. 2007) ("[C]ausing the state, or an arm of the state, to initiate a prosecution or serve process is insufficient to give rise to state action."); *Carey v. Cont'l Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987) (complaint to police does give rise to liability under § 1983 for a later arrest).

Plaintiffs cannot maintain a Section 1983 action based on Microsoft's coordination with ***federal*** authority because Section 1983 only regulates persons acting under ***state*** law. Plaintiffs have also not alleged "joint action" with the State during the AG Action. Plaintiffs allege only that that Microsoft testified at Plaintiffs' preliminary hearing. FAC ¶ 93. When a company merely provides law enforcement information and cooperates during an investigation, it is not acting under color of state law.

### 2.    Plaintiffs' federal malicious prosecution claim fails for the same reasons as their state-law claims.

Like Oklahoma courts, federal courts disfavor malicious prosecution actions. *See Becker v. Kroll*, 494 F.3d 904, 915 (10th Cir. 2007); *Cordova v. City of Albuquerque*, 816

F.3d 645, 653–54 (10th Cir. 2016). In addition, the federal common law of malicious prosecution uses the same five elements as Oklahoma law, requiring a plaintiff to show: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Sperry v. Maes*, 592 F. App'x 688, 694 (10th Cir. 2014). For the same reasons Plaintiffs cannot satisfy the elements of a claim under Oklahoma law, they cannot do so under federal law.

*First*, a "federal investigation," without more, is not actionable because a malicious prosecution claim under the federal constitution requires evidence of a Fourth Amendment "seizure," such as an arrest or prosecution. *See Wilkins v. DeReyes*, 528 F.3d 790, 797 (10th Cir. 2008) ("The ultimate question in such a case is whether plaintiff has proven the deprivation of a constitutional right." (internal quotation marks omitted)); *Becker*, 494 F.3d at 914 (Tenth Circuit has "repeatedly recognized . . . that, at least prior to trial, the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 must be 'the Fourth Amendment's right to be free from unreasonable seizures.'" (quoting *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996)); *cf. Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017) (identifying the first element as "the defendant caused the plaintiff's continued confinement or prosecution"). The "federal investigation" is not itself a seizure or arrest and therefore cannot be the basis of a malicious prosecution claim.

*Second*, the statute of limitations bars any portion of Plaintiff's claims based on

23

the DOJ Action. A two-year statute of limitations applies to a malicious prosecution claim under *Bivens* or Section 1983, which accrues upon dismissal of the underlying action. *See* Okla. Stat. tit. 12, § 95 (personal injury statute of limitations); *Wilson v. Garcia*, 471 U.S. 261, 279 (1985) (law of forum state supplies statute of limitations in § 1983 action absent federal limitation); *Myers v. Koopman*, 738 F.3d 1190, 1195 (10th Cir. 2013) (applying the forum state's personal injury statute of limitations to § 1983 claims), *as amended on denial of reh'g* (Jan. 8, 2014); *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994) (applying forum's personal injury statute of limitations in *Bivens* action); *Wilkins*, 528 F.3d at 796 (claim accrues on dismissal of action); *Mehdipour v. Sweeney*, 2017 WL 239385, at *3 (W.D. Okla. Jan. 19, 2017) (applying statute of limitations to bar Section 1983 claim based on fourth and fourteenth amendments). Thus, for the same reasons in Section III.A.2.c, Plaintiffs' malicious prosecution claim is time-barred to the extent it is based on the DOJ Action.

**Third**, Plaintiffs do not allege the DOJ or AG Actions terminated in their favor. Courts "look to the stated reasons for the dismissal as well as to the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence." *Wilkins*, 528 F.3d at 803; *Cordova*, 816 F.3d at 653 ("[A] plaintiff generally cannot maintain a malicious prosecution action unless his charges were dismissed in a manner indicative of innocence, even when he was entitled to dismissal on statutory or constitutional grounds."). Just as under Oklahoma law, an action that settles generally has not ended in a plaintiff's favor. *See, e.g.*, *M.G. v. Young*, 826 F.3d 1259, 1262 (10th Cir. 2016) ("[T]he plaintiff must demonstrate that the criminal proceedings were dismissed

for reasons indicative of innocence, and not because of an agreement of compromise, an extension of clemency, or technical grounds having little or no relation to the accused's guilt."). Thus, for the same reasons as in Section III.A.2.a, Plaintiffs have not adequately alleged that the federal or state actions terminated in their favor.

*Fourth*, for the reasons in Section III.A.2.a, Plaintiffs have failed to allege facts to show that Microsoft acted without probable cause. *See Erikson v. Pawnee Cty. Bd. of Cty. Comm'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001) (looking to Oklahoma law to define probable cause element of malicious prosecution claim); *McCarty v. Gilchrist*, 646 F.3d 1281, 1285-86 (10th Cir. 2011) (lack of probable cause is an element of the constitutional tort for malicious prosecution).

## IV.   CONCLUSION

Eight years after Microsoft reported Plaintiffs' software piracy to the FBI, Plaintiffs allege Microsoft did so unlawfully. Plaintiffs' stale and spurious allegations have required Microsoft to retain counsel and defend itself and the reputations of its employees and agents for merely exercising their rights to free speech and petition in cooperating with law enforcement. Microsoft respectfully asks this Court to dismiss this lawsuit with prejudice, award Microsoft its attorneys' fees and costs incurred with bringing this motion, and award sanctions in an amount to be determined by the Court.

Dated: June 16, 2017                Respectfully Submitted,

**DAVIS WRIGHT TREMAINE LLP**


By:  *s/ Ambika K. Doran*
Bonnie E. MacNaughton (admitted *pro hac vice*)
Ambika Kumar Doran (admitted *pro hac vice*)
James H. Wendell (admitted *pro hac vice*)
1201 Third Avenue, Suite 2200
Seattle, WA  98101
Telephone:  (206) 622-3150
Facsimile:  (206) 757-7700
Email: bonniemacnaughton@dwt.com
          ambikadoran@dwt.com
          jamiewendell@dwt.com


**HALL, ESTILL, HARDWICK,**
**GABLE, GOLDEN & NELSON, P.C.**

Robert D. Nelon, OBA #6610
Lindsay N. Kistler, OBA #32814
100 North Broadway, Suite 2900
Oklahoma City, OK 73102-8865
Telephone: (405) 553-2828
Facsimile: (405) 553-2855
Email: bnelon@hallestill.com
          lkistler@hallestill.com

**ATTORNEYS FOR DEFENDANT MICROSOFT**
**CORPORATION**

26

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Bret Burns
**Burns Law Office**
519 W. Chickasha Avenue
Chickasha, OK 73018

Ronald T. Shinn, Jr.
**McAfee & Taft**
10th Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102

Stanley M. Ward
Woodrow K. Glass
Barrett T. Bowers
Geoffrey A. Tabor
**Ward & Glass, LLP**
1601 N.W. 36th Avenue, Suite 100
Norman, OK 73072

William S. Leach
**McAfee & Taft**
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, OK 74102

*s/ James H. Wendell*
James H. Wendell